THE STATE OF OHIO, APPELLANT, *v.* SCHMITT, APPELLEE.

THE STATE OF OHIO, APPELLEE, *v.* WEIRTZ, APPELLANT.

[Cite as *State v. Schmitt,* 101 Ohio St.3d 79, 2004-Ohio-37.]

(Nos. 2002–1807 and 2002–2015—Submitted September 24, 2003—Decided January 21, 2004.)

FRANCIS E. SWEENEY, SR., J.

{¶ 1} In case No. 2002–1807, in June 2001, a state trooper stopped a vehicle driven by defendant-appellee, Kevin K. Schmitt, on State Route 219 in Mercer County after observing Schmitt weaving and driving left of center. The trooper smelled a strong odor of alcohol on Schmitt and observed that Schmitt was glassy-eyed and that his speech was slow. The trooper conducted three field sobriety tests: the horizontal gaze nystagmus test ("HGN"), the one-leg-stand test, and the walk-and-turn test. During these exercises, the trooper observed Schmitt's poor balance and inability to follow certain instructions. Schmitt also took a portable breath test, which yielded a result of .143 percent. Based upon the results of these tests and his observations, the trooper placed Schmitt under arrest for driving under the influence ("DUI"). Schmitt refused to take a breathalyzer test.

{¶ 2} Having been convicted of three DUI offenses within the last six years, Schmitt was indicted on a charge of a felony DUI pursuant to R.C. 4511.19(A)(1). Schmitt filed a motion to suppress all testimony related to the field sobriety tests. For purposes of the motion, the parties stipulated that the field sobriety tests were not administered in strict compliance with National Highway Traffic Safety Administration ("NHTSA") standards. The trial court granted the motion to suppress. In a two-to-one decision, the court of appeals for Mercer County affirmed the decision of the trial court, citing *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952.

{¶ 3} This cause is now before the court pursuant to our allowance of a discretionary appeal.

{¶ 4} In case No. 2002–2015, in April 2002, another state trooper observed defendant-appellant, Daniel Weirtz, speeding and weaving on Route 23 in Delaware County. Upon stopping Weirtz, the trooper smelled a strong odor of alcohol on him and noticed that Weirtz had slurred and muttered speech. Weirtz admitted that he had consumed four to five beers. The trooper administered the HGN test, the walk-and-turn test and the one-leg-stand test. The trial court later found that the HGN test was conducted in conformity with NHTSA standards and that Weirtz exhibited all six characteristics that signify intoxication. However, the walk-and-turn test and one-leg-stand tests were not administered in compliance with the NHTSA standards.

{¶ 5} Weirtz filed a motion to suppress any and all evidence obtained as a result of the stop, including the test results, statements he made, and "observations and opinions" of the trooper. The trial court initially overruled the motion to suppress. However, the court issued a subsequent entry in which it suppressed, for purposes of trial, any evidence concerning the "administration" of the walk-and-turn test and the one-leg-stand test. In a two-to-one decision, the court of appeals for Delaware County reversed. Although the court approved the trial court's exclusion of the actual test results, it held that the trooper could testify as a lay witness about his observations regarding Weirtz's performance on the tests.

{¶ 6} This cause is now before the court upon our determination that a conflict exists.

{¶ 7} In *Homan*, 89 Ohio St.3d 421, 732 N.E.2d 952, paragraph one of the syllabus, we held, "In order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." In reaching this holding, we noted that even minor deviations from the standardized procedures can bias the test results. Quoting from an NHTSA manual, we stressed that " '[i]f any one of the standardized field sobriety test elements is changed, the validity is compromised.' " *Homan*, 89 Ohio St.3d at 425, 732 N.E.2d 952. Therefore, we affirmed the judgment of the court of appeals, holding that the improper administration of the tests made their results inherently unreliable.

{¶ 8} We are initially asked to decide whether our holding in *Homan* precludes noncomplying field sobriety test results from admissibility at trial. The state argues that *Homan* is limited in its scope and that it excludes only the test results for probable-cause purposes. While we recognize that the holding of *Homan* addresses the probable-cause stage of litigation, we now extend our holding to the admissibility of such test results at trial. Whether there is probable cause to arrest depends upon whether an officer has sufficient information to cause a prudent person to believe that the suspect was driving under the

influence. Id. at 427, 732 N.E.2d 952. In the cases at bar, the issue is whether the elements of driving under the influence can be proven beyond a reasonable doubt. Since we required strict compliance with the field sobriety testing procedures to determine the lesser standard of probable cause, the same standard must apply to a determination of test-result admissibility at trial, where the standard of proof is higher and where the ultimate determination involves the defendant's guilt or innocence. Therefore, we hold that the lower courts properly suppressed the test results where the tests were not administered in accordance with standardized testing procedures.

{¶ 9} Since our decision in *Homan*, the General Assembly has amended R.C. 4511.19.[1] Under the amended statute, the arresting officer no longer needs to have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial. Instead, an officer may now testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards. Id. Consequently, we recognize that this portion of our decision will have limited applicability.

{¶ 10} With regard to the second issue before us, the following question has been certified to our court: "Does *State v. Homan* [2000], 89 Ohio St.3d 421, 2000-Ohio-212 [732 N.E.2d 952], preclude a law enforcement officer from testifying at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests when those tests are not administered in strict compliance with the National Highway Traffic Safety Administration Guidelines?" The defendants contend that where the underlying tests were administered improperly, the reliability of the entire test process is called into question and *all* facts and circumstances related to the testing, including officer observation, are unreliable and should be suppressed. Conversely, the state argues that even if the test results are excluded, the observations made by the arresting officer during even flawed test administration are proper lay testimony admissible under Evid.R. 701.

{¶ 11} In *Homan*, although we excluded the noncomplying field test results from our consideration, we nevertheless concluded that the totality of the

---

1. {¶ a} R.C. 4511.19(D)(4)(b) provides:

    {¶ b} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test * * * and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards * * *, all of the following apply:

    {¶ c} "(i) The officer may testify concerning the results of the field sobriety test so administered.

    {¶ d} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution * * *."

circumstances surrounding the defendant's arrest supported a finding of probable cause. In particular, we found relevant the officer's observations of the defendant, including the fact that he observed erratic driving, that the defendant's eyes were red and glassy, and that she smelled of alcohol. Id., 89 Ohio St.3d at 427, 732 N.E.2d 952. These observations clearly fall within the realm of Evid.R. 701, since they are rationally based on the perceptions of the witness and are helpful to a clear understanding of a fact in issue.

{¶ 12} The certified conflict concerns whether an officer's observations regarding a defendant's performance on nonscientific field sobriety tests should likewise be admissible as lay evidence of intoxication. It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. *Columbus v. Mullins* (1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422. See, also, *State v. McKee* (2001), 91 Ohio St.3d 292, 296, 744 N.E.2d 737. Such lay testimony is often crucial in prosecuting drunk driving cases. Moreover, such evidence is relevant and admissible pursuant to Evid.R. 401 and Evid.R. 402. Thus, courts have recognized that "[t]o prove impaired driving ability, the state can rely on physiological factors (*e.g.*, slurred speech, bloodshot eyes, odor of alcohol) and coordination tests (*e.g.*, field sobriety tests) to demonstrate that a person's physical and mental ability to drive is impaired." *State v. Wargo* (Oct. 31, 1997), Trumbull App. No. 96–T–5528, 1997 WL 703373.

{¶ 13} The dissenting judge in *Schmitt* and the majority of the court in *Weirtz*, which relied upon the *Schmitt* dissent, understood what constitutes appropriate lay testimony. In *Schmitt*, the dissenting judge, in arguing that the officer's observations should not be suppressed, explained that the "performance of the psychomotor tests involves observations that parallel those that a layperson would make in assessing an individual's sobriety. Thus, a defendant's ability to perform such simple tasks is within the juror's common understanding."

{¶ 14} The nonscientific field sobriety tests involve simple exercises, such as walking heel-to-toe in a straight line (walk-and-turn test). The manner in which a defendant performs these tests may easily reveal to the average layperson whether the individual is intoxicated. We see no reason to treat an officer's testimony regarding the defendant's performance on a nonscientific field sobriety test any differently from his testimony addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol. In all of these cases, the officer is testifying about his perceptions of the witness, and such testimony helps resolve the issue of whether the defendant was driving while intoxicated.

{¶ 15} Unlike the actual test results, which may be tainted, the officer's testimony is based upon his or her firsthand observation of the defendant's conduct and appearance. Such testimony is being offered to assist the jury in determining a fact in issue, i.e., whether a defendant was driving while intoxicated. Moreover, defense counsel will have the opportunity to cross-examine the officer to point out any inaccuracies and weaknesses. We conclude that an officer's observations in these circumstances are permissible lay testimony under Evid.R. 701. Therefore, we answer the certified question in the negative and hold that a law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests.

{¶ 16} Regarding case No. 2002–1807, we find that the trial court properly excluded the results of the noncomplying field sobriety tests. However, the lower courts erred in suppressing the arresting officer's trial testimony concerning his observations of the defendant's performance of the nonscientific standardized field sobriety tests. With regard to case No. 2002–2015, we affirm the judgment of the court of appeals, which held that the arresting officer may not testify as to the results of the noncomplying field sobriety tests but may testify as to his observations of the defendant's performance on these tests.

Judgment reversed
in case No. 2002–1807.

Judgment affirmed
in case No. 2002–2015.

Moyer, C.J., Resnick, O'Connor and O'Connell, JJ., concur.

Lundberg Stratton, J., concurs in part and dissents in part.

Pfeifer, J., dissents.

———————

**Lundberg Stratton, J., concurring in part and dissenting in part.**

{¶ 17} I agree with the majority to the extent it holds that even where a field sobriety test is not performed in exact compliance with standardized testing procedures, an officer's observations of the defendant are admissible not only for purposes of demonstrating probable cause, but at trial as evidence of a defendant's intoxication. However, I continue to disagree with the majority's conclusion that the threshold for admitting the results of the field sobriety test is strict

compliance with standardized testing procedures and its extension of this standard to the trial setting.

{¶ 18} In *State v. Homan* (2000), 89 Ohio St.3d 421, 430, 732 N.E.2d 952, we held that a field sobriety test must strictly comply with standardized procedures for the results to support probable cause. I dissented, arguing that field sobriety test results should be admissible for purposes of determining probable cause when the officer performs the test in substantial compliance with standardized testing procedures. I noted that administering field sobriety tests in trying environmental conditions is difficult at best. Therefore, I believed that rather than automatically rejecting test results for any deviation from standardized procedures, the better approach would be to require substantial compliance with standardized procedures and permit trial courts to determine whether the deviation prejudiced the defendant and warranted exclusion of the results. I continue to adhere to this reasoning and believe that substantial compliance should also be the test for admissibility of field sobriety test results at trial. My view in this case, as well as in *Homan*, is apparently shared by the General Assembly, as evidenced by its recent enactment of R.C. 4511.19(D)(4), which allows officer testimony and test results admitted in court proceedings if the prosecution can prove that the field sobriety test was conducted in *substantial compliance* with applicable testing standards by clear and convincing evidence. However, because R.C. 4511.19 applies prospectively only, I continue to voice my dissent.

{¶ 19} Accordingly, I respectfully concur in part and dissent in part.

---

PFEIFER, J., dissents.

{¶ 20} I dissent from the majority's holding that a police officer's observations of an incorrectly administered field sobriety test can be used as evidence against an accused. Field sobriety tests are not like breath or blood tests, where results are generated by an apparatus. The results of a field sobriety test are generated from the observations of the officer. There's nothing fed into a computer with an objective result printed out. The results *are* the officer's observations. Labeling an officer's observations "test results" and making them inadmissible, but calling them "observations" and making them admissible, is inconsistent.

{¶ 21} Of course, an officer's observations not related to the administration of a sobriety test should be admissible. The officers in these cases, for instance,

noted that the accuseds smelled of alcohol and exhibited glassy eyes and slurred speech. But we cannot have an officer testifying that he just happened to observe an accused's attempt to walk heel-to-toe in a straight line, and noticed a little wobbling. Are juries to believe that an accused would voluntarily stand on one leg and count while an officer was coincidentally observing?

{¶ 22} To a trier of fact, an officer's observations will carry virtually the same weight as field sobriety test results. The majority therefore effectively guts this court's decision in *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952.

---

Andrew J. Hinders, Mercer County Prosecuting Attorney, and Matthew K. Fox, Assistant Prosecuting Attorney, for appellant in case No. 2002–1807.

James A. Tesno, for appellee in case No. 2002–1807.

Peter B. Ruffing, Delaware City Prosecutor, and Kyle Rohrer, Assistant City Prosecutor, for appellee in case No. 2002–2015.

Saia & Piatt, P.L.L., Jon J. Saia and Brian C.M. Forbes, for appellant in case No. 2002–2015.

William F. Schenck and Elizabeth A. Ellis, urging reversal in case No. 2002–1807 and urging affirmance in case No. 2002–2015, for amicus curiae Ohio Prosecuting Attorneys Association.